OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 This appeal centers on the question whether the host of a “keg party” for minors, in the circumstances presented, might be liable as a person who, by “unlawfully furnishing to or unlawfully assisting in procuring alcoholic beverages” for minors, caused the injuries of a third party (General Obliga
 
 *357
 
 tions Law § 11-100). We conclude that there are material factual issues to be resolved and consequently reverse the Appellate Division order summarily dismissing the second cause of action against defendant Heidi Reyer.
 

 Plaintiff Carol Rust, a minor, was injured when she was punched in the face by Stephen Tarantino, also a minor, after a party at Reyer’s house on October 7, 1989. Tarantino had been drinking heavily at the party, and in his inebriated state struck plaintiff during a brawl on the street outside Reyer’s house in Merrick, New York.
 

 The facts, viewed in a light most favorable to plaintiff, are as follows. When Reyer, then 17, learned that her parents were going to be on vacation over the weekend of October 7, 1989, she planned a party in their absence. Word of the party reached the ears of a high school fraternity — of which Tarantino was a member — known as the Marquis. Representatives of the fraternity approached Reyer and attempted to convince her to allow them to bring beer. Those attending the party would pay a one-time fee to receive a 16-ounce cup, allowing them unlimited access to the beer. Reyer agreed to have the beer at her party, in exchange for a portion of the proceeds.
 

 On the day of the party, fraternity members arrived with several kegs of beer, which Reyer allowed them to store in the garage. Fraternity members later set up the kegs, where they could be accessed from the Reyers’ backyard. As the party started, the fraternity stationed three individuals at the entrance to the backyard, one to collect money, a second to stamp the hands of those who had paid, and a third to hand out cups. Reyer attempted to arrange for her friends to have free beer, and she observed many of the estimated 150 under-aged guests consuming alcohol. She did not herself drink or dispense beer at the party, collect money, stamp hands or distribute cups.
 

 Later, responding to neighbors’ complaints, the police arrived. Reyer and the police dispersed the party but the guests, including Rust and Tarantino, milled around in the street near Reyer’s house. There, a melee erupted and Tarantino— impaired by the alcohol he had consumed at the party— punched plaintiff once in the face, severely injuring her. After the party the kegs were stored in the Reyers’ garage, where they were later retrieved by the fraternity. Reyer never received the promised share of the fees, although she sought payment several times after the party.
 

 
 *358
 
 Rust ultimately brought suit against Reyer, her parents and Tarantino, alleging negligence and violations of General Obligations Law §§ 11-100 and 11-101. Tarantino settled with plaintiff, and after joinder of issue the remaining defendants moved for summary judgment on all claims. Plaintiff opposed only that portion of the motion dismissing the General Obligations Law § 11-100 claim against Reyer. Supreme Court first dismissed the uncontested claims and then granted the remainder of defendant’s motion. Relying on the principle that statutes in derogation of the common law are to be narrowly construed, the court held that while “Heidi Reyer may be said to have ‘facilitated’ the furnishing of beer to Stephen Tarantino and other party guests, the statute cannot be stretched to impose liability for this type of conduct.” The court further concluded that Reyer had not assisted in procuring the alcohol, because fraternity members had purchased the beer, brought it to the party and personally dispensed it.
 

 Plaintiff appealed only that portion of Supreme Court’s order dismissing the General Obligations Law § 11-100 claim against Reyer, and the Appellate Division affirmed. That court held that “General Obligations Law § 11-100 is not applicable to a homeowner who has neither supplied alcohol to nor procured alcohol for consumption by an underage person” (235 AD2d 413). We granted plaintiff leave to appeal and now reverse.
 

 Analysis
 

 Underage drinking is a significant societal problem that has generated widespread concern (see,
 
 e.g.,
 
 French, Kaput and Wildman,
 
 Special Project: Social Host Liability for the Negligent Acts of Intoxicated Guests,
 
 70 Cornell L Rev 1058 [1985]; Comment,
 
 Killer Party: Proposing Civil Liability for Social Hosts who Serve Alcohol to Minors,
 
 30 J Marshall L Rev 245, 257-258 [1996]
 
 [“Killer Party”]).
 
 All 50 States have set minimum drinking ages, a measure which has to some extent prevented minors from themselves purchasing alcohol at bars and liquor stores.
 
 [1]
 
 Those same laws, however, have proven far less effective in stopping minors from obtaining alcohol in a social setting, where it is provided to them by individuals who have little, if any, financial disincentive for doing so
 
 (see, e.g., Killer Party, op. cit.,
 
 at 260).
 

 States have responded to this circumvention of their minimum age laws in a variety of ways. Some have by statute
 
 *359
 
 imposed civil liability, criminal liability or both on gratuitous providers of alcohol. In other States, courts have recognized a common-law duty of the provider
 
 (see
 
 generally, Annotation,
 
 Social Host’s Liability For Injuries Incurred By Third Parties As A Result Of Intoxicated Guest’s Negligence,
 
 62 ALR4th 16). New York has taken the former approach: in addition to making it a crime to furnish alcoholic beverages to a minor in most cases (Penal Law § 260.20 [2]), in 1983 the Legislature enacted General Obligations Law § 11-100, which provides:
 

 “Any person who shall be injured in person, property, means of support or otherwise, by reason of the intoxication or impairment of ability of any person under the age of twenty-one years, whether resulting in his death or not, shall have a right of action to recover actual damages against any person who
 
 knowingly causes such intoxication or impairment of ability by unlawfully furnishing to or unlawfully assisting in procuring alcoholic beverages
 
 for such person with knowledge or reasonable cause to believe that such person was under the age of twenty-one years” (General Obligations Law § 11-100 [1] [emphasis supplied]).
 
 [2]
 

 Conceding that Reyer herself never actually served alcohol to any party guest, plaintiff nonetheless contends that Reyer’s actions constituted “furnishing” under the statute. Neither the relevant statutes (including related enactments General Obligations Law § 11-101 and Alcoholic Beverage Control Law § 65) nor our prior cases define the term “furnishing,” which is ordinarily understood to mean “to provide in any way,” “to supply” or “to give”
 
 (see, e.g.,
 
 Black’s Law Dictionary 675 [6th ed 1990]; Webster’s Deluxe Unabridged Dictionary 743 [2d ed 1983];
 
 accord, Ball v Allstate Ins. Co.,
 
 81 NY2d 22, 25).
 

 Here, Reyer allegedly gave permission for the alcohol at the party she was planning, provided storage for the kegs of beer both before and after the party, negotiated a share of the proceeds from cup sales for herself and at least attempted to arrange for her friends to drink the beer without charge. Her request for a portion of the proceeds from cup sales underscores her complete complicity in the fraternity’s plans to furnish beer. As stated in plaintiffs affidavit, Reyer “chose to partici
 
 *360
 
 páte in a scheme to furnish alcohol to underage individuals in return for a payment of money.” Moreover, without Reyer’s advance permission, the beer could not have been served as it ultimately was. Indeed, many of the 150 minors present may well not have come to the party in the first instance had they not known that alcohol would be available.
 

 We conclude that if proven at trial, these facts could bring Reyer’s acts within the meaning of “furnishing” as used in the statute.
 
 [3]
 
 Reyer’s role could well be viewed as part of a deliberate plan to provide, supply or give alcohol to an underage person.
 

 In reaching this conclusion we are mindful that a statute in derogation of the common law must be strictly construed
 
 (see, Sherman v Robinson,
 
 80 NY2d 483, 487;
 
 D’Amico v Christie,
 
 71 NY2d 76, 83). We are mindful as well that our prime directive, in matters of statutory interpretation, is to give effect to the intention of the Legislature
 
 (see, Ferres v City of New Rochelle,
 
 68 NY2d 446, 451;
 
 People v Ryan,
 
 274 NY 149, 152). To interpret “furnishing” as Reyer suggests — in effect limiting it to those who hand the alcohol to the minor — gives the term an overly narrow reach that undermines the clear legislative goal.
 

 The purpose of General Obligations Law § 11-100 is to employ civil penalties as a deterrent against underage drinking
 
 (Sheehy v Big Flats Community Day,
 
 73 NY2d 629, 636). As the bill’s cosponsor noted, “[t]his legislation seeks to protect minors from those persons uncaring enough to provide intoxicating beverages to minors in an indiscriminate manner and by so doing, to endanger the life and safety of the minor as well as of the general public” (Letter of Assemblymember John F. Duane, Bill Jacket, L 1983, ch 641). In the words of Senator William T. Smith, also a cosponsor of the statute:
 

 “Over the years, numerous court cases have dealt extensively with the question of common law liability on the part of those who knowingly furnish alcoholic beverages to under-age persons at graduation parties, church socials, wedding receptions, office parties, and college campuses. Under-age persons consuming excess alcohol at these social events unquestionably have the same propensity to do harm to the traveling public as those who have
 
 *361
 
 been served alcohol pursuant to a sale” (1983 NY Legis Ann, at 281).
 

 The facts alleged demonstrate that Reyer was more than an unknowing bystander or an innocent dupe whose premises were used by other minors seeking to drink
 
 (cf., Dodge v Victory Mkts.,
 
 199 AD2d 917;
 
 Reickert v Misciagna,
 
 183 AD2d 151). Similarly, she was more than a passive participant who merely knew of the underage drinking and did nothing else to encourage it
 
 (cf., Lane v Barker,
 
 241 AD2d 739;
 
 MacGilvray v Denino,
 
 149 AD2d 571;
 
 see also, Pelinsky v Rockensies,
 
 209 AD2d 392). Reyer played an indispensable role in the scheme to make the alcohol available to the underage party guests.
 

 Reading the statute to foreclose responsibility in these circumstances would allow unintended circumvention of the legislation and negate its deterrent purpose
 
 (see,
 
 1983 NY Legis Ann, at 281-282 [the “time has come for every individual to accept responsibility for an activity which most people partake in, consumption of alcoholic beverages — the responsibility as a consumer, and as a furnisher, as well”];
 
 see also, Killer Party, op. cit.,
 
 at 249-250).
 

 Accordingly, the order of the Appellate Division should be reversed, with costs, and the motion for summary judgment dismissing the second cause of action against defendant Heidi Reyer should be denied.
 

 Judges Titone, Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order reversed, etc.
 

 [1]
 

 . Alcoholic Beverage Control Law § 65 establishes 21 as the minimum drinking age in New York.
 

 [2]
 

 . The statute was amended in 1985 to match the Legislature’s decision to raise the minimum drinking age in this State from 19 to 21 (see, L 1985, ch 274, § 4).
 

 [3]
 

 . Given this conclusion, we need not and do not reach plaintiffs alternative contention that defendant “unlawfully assist [ed] in procuring” alcohol for an underage person.